## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ESTHER BUCHANAN, on behalf of | ) | |
| plaintiff and the class defined herein, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1 : 12 CV 1011 JTN |
| | ) | |
| NORTHLAND GROUP, INC., | ) | |
| Defendant | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Daniel A. Edelman
Thomas E. Soule
Edelman Combs Latturner & Goodwin LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ....................................................................................... ii

I.      PLAINTIFF'S CLAIMS .................................................................................. 1

II.     INTERPRETATIONS OF FEDERAL AUTHORITIES ................................... 2

      A.      The Federal Trade Commission .......................................................... 2

           1.      The Asset Acceptance consent decree ...................................... 2

           2.      Research, reports and actions preceding the Asset consent decree ........ 3

           3.      The Structure and Practices of the Debt Buying Industry ....................... 5

      B.      The Consumer Financial Protection Bureau and other agencies............................ 6

      C.      State and local authorities .................................................................. 6

III.    DEFERENCE DUE TO FEDERAL AGENCIES ............................................ 7

      A.      *Chevron* and *Solis* .......................................................................... 7

      B.      Inapplicability of defendant's cited case law ...................................... 10

IV.     THE FDCPA, AND SIXTH CIRCUIT AND MICHIGAN CASE LAW ........................... 12

      A.      The failure to disclose that the debt was time-barred .......................... 12

      B.      The settlement proposal on a time-barred debt .................................... 15

V.      OTHER RELEVANT CASES ........................................................................ 15

      A.      *McRill v. Nationwide Credit* ............................................................ 15

      B.      Other cases ......................................................................................... 17

VI.     CONCLUSION............................................................................................... 18

CERTIFICATE OF SERVICE .................................................................................... 18

# TABLE OF AUTHORITIES

*Cases*

*Alaska v. O'Neill Investigations Inc.,* 609 P.2d 520 (Alaska 1980) ................................................. 9

*Beler v. Blatt Hasenmiller Leibsker & Moore LLC,* 480 F.3d 470 (7th Cir. 2007).......... 10, 11, 17

*Board of Regents v. Tomanio,* 446 U.S. 478 (1980)....................................................................... 13

*Bridge v. Ocwen Fed. Bank FSB,* 681 F.3d 355 (6th Cir. 2012) ............................................ 12, 14

*Carrier Corp. v. Outokumpu Oyj,* 673 F.3d 430, (6th Cir. 2012).................................................... 2

*Chevron USA Inc. v. Natural Res. Def. Council Inc.,* 467 U.S. 837 (1984)............................... 7, 9

*Clifford Steers & Shenfield Inc. v. FTC,* 392 F.2d 921 (6th Cir. 1968)........................................... 8

*Collection Professionals Inc. v. Logan,*
    296 Ill.App.3d 959, 695 N.E.2d 1344 (Ill. Ct. App. 1998*)*........................................... 15

*Dawe v. Capital One Bank,* 456 F.Supp.2d 236 (D.Mass. 2006)................................................... 11

*Delaware Dept. of Nat. Res. v. U.S. Army Corps of Engineers,* 685 F.3d 259 (3d Cir. 2012)..... 10

*Durham v. Brock,* 498 F.Supp. 213, 220 (M.D. Tenn. 1980),
    aff'd, 698 F.2d 1218 (6th Cir. 1982)................................................................................ 8

*Easterling v. Collecto Inc.,* 692 F.3d 229 (2d Cir. 2012) ............................................................. 11

*Encycl.  Brittanica Inc. v. FTC,* 605 F.2d 964 (7th Cir. 1979)........................................................ 8

*Freyermuth v. Credit Bureau Servs. Inc.,* 248 F.3d 767 (8th Cir. 2001)...................................... 11

*FTC v. Colgate-Palmolive Co.,* 380 U.S. 374 (1965)....................................................................... 8

*FTC v. IFC Credit Corp.,* 543 F.Supp.2d 925 (N.D.Ill. 2008) ...................................................... 11

*FTC v. Mandel Bros.,* 359 U.S. 385 (1959) ...................................................................................... 8

*FTC v. Sperry & Hutchinson Co.,* 405 U.S. 233 (1972).................................................................. 11

*Grolier Inc. v. FTC,* 699 F.2d 983 (9th Cir.1983)............................................................................. 9

*Harvey v. Great Seneca Fin. Corp.,* 453 F.3d 324 (6th Cir. 2006) ......................................... 12, 14

*Huertas v. Galaxy Asset Mgmt.,* 641 F.3d 28 (3d Cir. 2011)......................................................... 11

*In re Sprint Comms. Co. LP,* 234 Mich.App. 22; 592 N.W.2d 825 (Mich. Ct. App. 1999).......... 8

*In re TJX Cos. Retail Sec. Breach Litig.,* 564 F.3d 489 (1st Cir. 2009) ........................................ 9

*Kimber v. Federal Fin. Corp.,* 668 F.Supp. 1480 (M.D. Ala. 1987)....................................... 13, 14

*Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433 (6th Cir. 2008).............. 13

*Kraft Inc. v FTC,* 970 F.2d 311 (7th Cir.1992).................................................................................. 8

*Large v. LVNV Funding LLC,* No. 1:09CV689,
    2010 WL 3069409 (W.D.Mich. Aug. 2, 2010)........................................................ 10, 16

*Lox v. CDA Ltd.,* 689 F.3d 818 (7th Cir. 2012) ............................................................ 10

*Magee v. Portfolio Recovery Assocs. LLC,*
    No. 1:12CV1624, 2013 WL 239100, (N.D.Ill. Jan. 17, 2013) ................................. 2

*Massachusetts v. Fremont Inv. & Loan,* 897 N.E.2d 548 (Mass. 2008)........................ 9

*McMahon v. LVNV Funding LLC,* No. 1:12CV1410,
    2012 WL 2597933 (N.D.Ill. July 5, 2012)........................................................ 2, 15, 17

*McMahon v. LVNV Funding LLC,* No. 1:12CV1410,
    2012 WL 3307011 (N.D.Ill. Aug. 13, 2012) .................................................... 2, 15, 17

*McRill v. Nationwide Credit Inc.,* No. 2:12CV2175,
    2012 WL 6727974, (C.D.Ill. Dec. 6, 2012) ..................................................... 1, 15, 16

*Miller v. Javitch Block & Rathbone,* 561 F.3d 588 (6th Cir. 2009)............................... 12

*Miller v. NCO Portfolio Mgmt. Inc.,* No. 1:09CV616,
    2010 WL 2671910 (S.D.Ind. June 28, 2010)........................................................ 10

*Minnesota v. Midland Funding LLC,* No. 27-CV-11-11510 (Hennepin Co. (Minn.) Dist. Ct.)..... 7

*Neff v. Capital Acquis. & Mgmt. Co.,* 352 F.3d 1118 (7th Cir. 2003)........................... 16

*Olvera v. Blitt & Gaines PC,* 431 F.3d 285 (7th Cir. 2005).................................... 11, 12

*Rawson v. Source Receivables Mgmt. LLC,* No. 1:11CV8972,
    2012 WL 3835096,(N.D.Ill. Sept. 4, 2012) ............................................................ 1, 17

*Schaefer v. ARM Receivable Mgmt. Inc.,* 2011 WL 2847768 (D.Mass. July 19, 2011)............... 11

*SEC v. Chenery Corp.,* 332 U.S. 194 (1947).................................................................. 9

*Shorty v. Capital One Bank,* 90 F.Supp.2d 1330 (D.N.M. 2000)..................................... 11

*Simeon Mgmt. Corp. v. FTC,* 579 F.2d 1137 (9th Cir. 1978)......................................... 9

*Skidmore v. Swift & Co.,* 323 U.S. 134 (1944)...................................................... 10, 16

*Solis v. Laurelbrook Sanitarium & School Inc.,* 642 F.3d 518 (6th Cir. 2011)............................ 9

*Spiegel Inc. v. FTC,* 540 F.2d 287 (7th Cir. 1976) ...................................................... 11

*Trans Union LLC v. FTC,* 295 F.3d 42  (D.C. Cir. 2002) ............................................ 7

*Trentadue v. Buckler Lawn Sprinkler,* 479 Mich. 378; 738 N.W.2d 664 (Mich. 2007)............... 13

*United States v. Asset Acceptance LLC,* No. 8:12CV182 (M.D.Fla.)........................................ 3

*United States v. Boucha,* 236 F.3d 768 (6th Cir. 2001)................................................ 11

*Walker v. Cash Flow Consultants Inc.,* 200 F.R.D. 613 (N.D.Ill. 2001).................................... 11

*Wallace v. Washington Mut. Bank FA,* 683 F.3d 323 (6th Cir. 2012).................................. 12, 14

iii

*Warner-Lambert Co. v. FTC,* 562 F.2d 749 (D.C. Cir. 1977) ........................................ 9

*Williams Co. v. FTC,* 381 F.2d 884 (6th Cir. 1967) ................................................... 8, 9

*Weathers v. Gem City Account Serv. Inc.,* No. 3:09CV3280,
    2010 WL 3210985(C.D.Ill. Aug. 13, 2010) .................................................... 17

*Yeiter v. Knights of St. Casimir Aid Society,* 461 Mich. 493; 607 N.W.2d 68  (Mich. 2000) ...... 13

*Zemeckis v. Global Credit & Coll. Corp.,* 679 F.3d 632 (7th Cir. 2012),
    cert. denied, 133 S.Ct. 584 (2012) ............................................................ 16

## Statutes and Rules

6 N.Y. City R. §2-191 ............................................................................... 7

15 U.S.C. §1692 *et seq.* ............................................................................ 1

15 U.S.C. §45 ...................................................................................... 4

15 U.S.C. §1692e ........................................................................ 5, 12, 14, 15, 16, 17

15 U.S.C. §1692f ............................................................................ 10, 12, 15, 16

15 U.S.C. §1692e(2)(A) ........................................................................ 12, 14, 17

15 U.S.C. §1692e(10) ............................................................................. 12, 14

15 U.S.C. §1692g ................................................................................. 15, 16

53 Fed.Reg. 50097 (Dec.13, 1988) ................................................................... 12

940 Code Mass. Reg. §7.07(24) ....................................................................... 7

M.C.L. §600.5807(8) ................................................................................ 1

N.M. Admin. Code §12.2.12.1 *et seq* ................................................................ 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN  DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ESTHER BUCHANAN, on behalf of          )
plaintiff and the class defined herein,    )
                  Plaintiff,           )
                           )
          vs.                     )          1 : 12 CV 1011 JTN
                           )
NORTHLAND GROUP, INC.,             )
               Defendant.        )

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

**I.     PLAINTIFF'S CLAIM**S

     Defendant sent plaintiff a letter seeking collection on a consumer credit card debt, on which payment had not been made for more than six years.  (Doc. 1, ¶¶10-13 and <u>Exhibit A</u>.) Per M.C.L. §600.5807(8), an action for breach of contract is barred if it is not brought within six years.  Defendant failed to disclose this fact, and that the debt was not legally enforceable; it therefore made false, misleading and unfair representations to plaintiff, contrary to the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA").  (Doc. 1, ¶¶14-30.)

     *Rawson v. Source Receivables Mgmt. LLC*, No. 1:11CV8972, 2012 WL 3835096, *2 (N.D.Ill. Sept. 4, 2012) held that, "to the extent that [a] dunning letter implies that the debt is legally enforceable when it is, in fact, barred by the statute of limitations, I conclude that plaintiff has stated a claim" under the FDCPA.  *McRill v. Nationwide Credit Inc*., No. 2:12CV2175, 2012 WL 6727974, *5 (C.D.Ill. Dec. 6, 2012), held that

> it is plausible that, even absent a threat of litigation, a collection letter that fails to disclose that a debt is time-barred, or the dates of the transactions giving rise to the debt (which would, at least, give the consumer some idea of how old the debt was), would deceive at least a significant fraction of the population as to the character and legal status of the debt by creating the impression that the debt collector could sue to collect.

     These decisions are in line with findings by federal agencies which enforce the FDCPA. Each agency, relying on extensive research, came to the same conclusion as the cited cases.

     Furthermore, the letter said that the creditor was "willing to reduce your balance by offering you a settlement.  We are not obligated to renew this offer.  Upon receipt and clearance

1

of $1,668.96, your account will satisfied and closed and a settlement letter will be issued."  (Doc.

1, Exhibit A.) As to settlement proposals for time-barred debts, *McMahon v. LVNV Funding*

*LLC*, No. 1:12CV1410, 2012 WL 2597933 (N.D.Ill. July 5, 2012) ("*McMahon I*"),

*reconsideration denied*, 2012 WL 3307011 (N.D.Ill. Aug. 13, 2012) ("*McMahon II*"), favors

plaintiff.  *McMahon II* held:

> an unsophisticated consumer may be deceived into believing that the offer of a
> "settlement" implies that there is a legally enforceable obligation to pay the debt.  The
> lack of any case law to the contrary, coupled  with the Seventh Circuit's reticence to
> resolve questions concerning the confusing nature of a dunning letter at the pleadings
> stage, plausibly suggests that the offer of settlement on a time-barred debt may violate
> the FDCPA. [*McMahon II* at *3.]

*Accord*, *Magee v. Portfolio Recovery Assocs. LLC*, No. 1:12CV1624, 2013 WL 239100, *4-*5

(N.D.Ill. Jan. 17, 2013).[1]

This Court must take all allegations as true and draw inferences in her favor.  *Carrier*

*Corp. v. Outokumpu Oyj*, 673 F.3d 430, 444 (6th Cir. 2012).  By this standard, plaintiff has

stated a claim.

## II.     INTERPRETATIONS OF FEDERAL AUTHORITIES

### A.     *The Federal Trade Commission*

#### 1.     *The Asset Acceptance consent decree*

The FTC found in 2012 that "most consumers do not know their legal rights with respect

to collection of old debts past the statute of limitations.... When a collector tells a consumer that

she owes money and demands payment, it may create the misleading impression that the

collector can sue the consumer in court to collect that debt."  (Doc. 1, ¶19; Exhibit 2 attached

hereto.)  Implicit in this is that "most consumers" would include the "least sophisticated

consumer" described in most cases stating how compliance with the FDCPA is measured.

The FTC's finding came through a complaint and a consent decree which – after a vote

by the Commissioners (*id*.) – was entered into with Asset Acceptance LLC ("Asset"), a large

---

[1] The unreported cases mentioned here are attached as Exhibit 1 for the Court's
convenience.

2

debt buyer based in Michigan.  Asset allegedly "[failed] to disclose that debts are too old to be legally enforceable or that a partial payment would extend the time a debt could be legally enforceable."  (*Id.*)  Asset's actions allegedly concerned collection activities that did *not* involve the actual filing of suits, but merely alleged collection communications directly with the consumer.  *United States v. Asset Acceptance LLC*, No. 8:12CV182 (M.D.Fla.), Doc. 1, ¶¶33-34 (Exhibit 3); see *id.*, Doc. 5 (Jan. 31, 2012 Consent Decree).  The FTC specifically found, in considering Asset's conduct, that

> many consumers do not know if the accounts that Asset is attempting to collect are beyond the statute of limitations.... **When Asset contacts consumers to collect on a debt, many consumers believe they could experience serious negative consequences, including being sued, if they fail to pay the debt.... If consumers knew, in connection with a past-statute debt, that Asset had no legal means to enforce collection of the debt.... some consumers would likely choose not to make a payment or a written promise to pay.** [Exhibit 3, ¶34 (emphasis added).]

The consent decree reached between the FTC and Asset requires it to disclose, whenever it attempts to collect a time-barred debt, that "the law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it."  (*Asset*, Doc. 5 at 12-14 (Part IV, §§D-G).)  This was described by the FTC as fair warning to all debt collectors that, "even with old debt, the prohibitions against deceptive and unfair collection methods apply."  (Exhibit 2.)

Later, the message was reinforced with a notice to the industry, which described Asset's conduct as improper.  (Exhibit 4.)  If this court were to permit defendant's letter notwithstanding actions taken by the FTC with respect to Asset, simply because defendant was not a party to the consent decree (Memo at 1, 2, 11-13), then defendant would actually gain a competitive *advantage* over Asset.  Defendant would be permitted to seek collection on time-barred debts without disclosing the facts that Asset, by court order, must disclose.  Such a result would be totally inconsistent with the FTC's warning provided to the entire debt collection industry.

> 2.    *Research, reports and actions preceding the Asset consent decree*

This consent decree also was not the first time the FTC had sought to take action against illegal debt collection practices – between 1979 and 2008, the Commission initiated no less than 68 lawsuits against debt collectors in federal courts.  (Exhibit 5 at B1-B3.)  Further, the FTC

regularly conducts workshops and research on debt collectors, which inform its decisions to regulate, and take action against, debt collectors.

In 2007, the FTC held a series of public workshops to evaluate the need for reform in the debt collection system.  Its 2009 report – "Collecting Consumer Debts: The Challenges of Change" (http://www.ftc.gov/bcp/workshops/debtcollection/dcwr.pdf – excerpts attached as Exhibit 5) – identified the growth of the debt buying industry as the most significant change in debt collection practices since the enactment of the FDCPA more than 30 years ago, and discussed the consumer challenges raised by it. The report noted that "purchased debt typically is classified by its age and the number of debt collectors who have attempted to collect it before it was sold." (Exhibit 5 at 13-14.)  However, minimal records were provided upon sale of a debt portfolio, according to DBA International, a debt buyer trade group; "it is common for a debt buyer to receive only a computerized summary of the creditor's business records when it purchases a portfolio...." (*Id.*, 22).  Based on this, the FTC found that "...there is a consensus that suing or threatening to sue to collect time-barred debt is unlawful and unethical for debt collectors...." (*Id.* at 64.)

The FTC concluded that it needed more information.  To obtain it, further roundtables where held in Chicago, San Francisco and Washington – with debt collectors, consumer advocates, private attorneys, academics, government officials, arbitrators and judges all participating.  Based on their analysis of issues related to debt collection litigation, and after receiving public comment, it issued a report in 2010 entitled "Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration." (Exhibit 6 (excerpts of report, available in full at http://www.ftc.gov/os/2010/07/debtcollectionreport.pdf).)  This report found that "that the FDCPA bars actual or threatened suit to collect on time-barred debts." (*Id*. at 23.)  In addition,

> The Commission takes no position on whether the FDCPA should be amended to preclude collectors from collecting debt that they know or should know is time-barred. Nevertheless, because most consumers do not know or understand their legal rights with respect to the collection of time-barred debt, the Commission believes that in many circumstances such a collection attempt may create a misleading impression that the collector can sue the consumer in court to collect the debt, in violation of [15 U.S.C.

§§45 and 1692e]. **To avoid creating this misleading impression, collectors would need to disclose clearly and prominently to consumers before seeking payment on such time-barred debt that, because of the passage of time, they can no longer sue in court to collect the debt or otherwise compel payment.** [*Id*. at 29-30 (emphasis added).]

Thus, the FTC pursuit of the Asset consent decree is consistent with, and a natural extension of, the study of whether pursuit of time-barred debt is a "deceptive" act.

Such research is also conducted independent of the FTC. For example, two academics from the University of New Mexico studied attempts to collect on time-barred debts and found that disclosing that a debt is time-barred, in a collection letter, is material to the consumer. Goldsmith, Timothy and Natalie Martin, "Testing Materiality under the Unfair Practices Acts: What Information Matters When Collecting Time Barred Debts?", 64 Consumer Fin. L.Q.Rep. 372 (2010) (Exhibit 7). In particular, the study found that "knowing that a debt was no longer enforceable influenced consumers' decisions about choosing a debt repayment plan.... [Time] barred debt information was clearly material information and such information should be included in any communication to debtors." (*Id*. at 380.)

3.    *"The Structure and Practices of the Debt Buying Industry"*

The most recent FTC statement on the matters at issue here came in a report from January 2013. (Available at http://www.ftc.gov/os/2013/01/debtbuyingreport.pdf – excerpts attached as Exhibit 8).) This report referred specifically to (a) the *Asset* litigation and consent decree (*id*. at 27 n.115, 29, and 48), (b) the FTC reports previously mentioned (*e.g.*, *id*. at 1), and (c) the University of New Mexico study (*id*. at 9 n.40 and 47 n.194). It was also based on the FTC's own study of approximately 5,000 portfolios of debt purchased by nine of the nation's largest debt buyers – consisting of about 90 million consumer accounts carrying approximately $143 billion in face-value, which was purchased by the debt buyers for about $6.5 billion. Debts that would be time-barred in Michigan (*i.e.*, more than six years old) comprised approximately 12% of all debt purchased through contracts that the FTC studied. Beyond that, the FTC relied upon reports from interested groups, as well as its own "extensive experience" in the area, including "more than 80 law enforcement actions over more than three decades alleging illegal

debt collection practices, including actions against debt buyers, [and] a robust history of conducting research and policy work related to debt collection issues."  (Exhibit 8 at *iv - v*, 7-10, 43, 49.)

The FTC found that "collectors may sue or threaten to sue about debts that are time-barred – that is, beyond the applicable statute of limitation.  Collecting on time-barred debts without disclosing that the collector cannot sue to recover is deceptive in some circumstances." (*Id*. at 42.)  As the FTC explained,

> debt collectors, including debt buyers, may violate the law not only if they file an action to collect on time-barred debt, but also if they engage in deception in collecting on time-barred debt. When collectors attempt to recover on debts, in many circumstances, such efforts may convey or imply to consumers that the collectors could sue them if they do not pay. If the debts are time-barred, this message would be false or misleading, because the collectors in fact cannot legally file an action against them if they do not pay. Information about the consequences of not paying debts being collected appears to be important to consumers in deciding whether to pay debts and in what order to pay debts. [*Id*. at 46-47 (citations omitted).]

### B.       The Consumer Financial Protection Bureau and other agencies

After obtaining enforcement authority, the Consumer Financial Protection Bureau ("CFPB") – together with the FDIC, the Federal Reserve and the Office of the Comptroller of the Currency – entered into three consent orders with American Express ("AmEx") on October 1, 2012.  Each of these orders require AmEx entities to "provide disclosures concerning the expiration of [their] litigation rights when collecting debt that is barred by applicable state statutes of limitations," and gave the CFPB and FDIC authority to enforce compliance with this requirement.  Furthermore, any entity which purchases, or is assigned, debts from these AmEx entities must be informed of this requirement, and comply with it.  This applies both in general, and with respect to collection attempts containing settlement offers.  (Exhibit 9 (No. 2012 CFPB 2 (AmEx Centurion Bank) at 6-8), Exhibit 10 (No. 2012 CFPB 3 (AmEx Bank FSB) at 5-7), and Exhibit 11 (No. 2012 CFPB 4 (AmEx Travel Related Services Co. Inc.) at 5 (incorporating debt collection provisions of other two consent decrees)).  See Exhibit 12 (fact sheet on actions).)

### C.       State and local authorities

The findings of the FTC, the CFPB, the FDIC, the Federal Reserve and the Treasury have

been repeated by state and local authorities.  *Minnesota v. Midland Funding LLC*, No. 27-CV-11-11510 (Hennepin Co. (Minn.) Dist. Ct.), resulted in a consent decree requiring Midland Funding (a debt buyer) to disclose whether a debt is time-barred in its communications with debtors.  (Exhibit 13.)  North Carolina has declared the collection of time-barred debt, whether through a suit or through pre-litigation collection attempts, to be unconscionable.  N.C.Gen.Stat. §75-55(1).  A similar regulation in New Mexico places an affirmative duty upon collectors to determine whether a debt is time-barred, and prohibits attempts to collect that debt unless the time-barred nature of the debt, and the consequences of making a payment anyway, are clearly disclosed.  N.M. Admin. Code §12.2.12.1 *et seq.*  See also 940 Code Mass. Reg. §7.07(24) and 6 N.Y. City R. §2-191.

Beyond that, the AmEx consent decrees, issued by the CFPB and other agencies, came about after assistance was received by the Utah Department of Financial Institutions.  Thus the state and federal regulators cooperated in reaching the findings of fact upon which the consent orders were founded. (See Exhibit 9 at 2-5, Exhibit 11 at 2-4, and Exhibit 12.)

## III.      DEFERENCE DUE TO FEDERAL AGENCIES

Thus, *five* federal agencies with authority to consider what is deceptive conduct and take appropriate action have concluded that the conduct defendant engaged in was deceptive and unfair.  State and local agencies with the authority to regulate collectors have come to precisely the same conclusion as the FTC, CFPB, FDIC, the Federal Reserve and the Treasury have.  These findings, as to the meaning of terms used in laws which they enforce, deserve deference.

### A.      *Chevron and Solis*

Deference to the decisions of a federal agency, regarding statutes it has the authority to interpret and enforce, is required under *Chevron USA Inc. v. Natural Res. Def. Council Inc.*, 467 U.S. 837 (1984).  Further, as explained by *Trans Union LLC v. FTC*, 295 F.3d 42, 48-50 (D.C. Cir. 2002), where "Congress enacts an ambiguous provision within a statute entrusted to the agency's expertise, it has implicitly delegated to the agency the power to fill those gaps." (Citations omitted.)

Responsibility for enforcement of the FDCPA formerly resided with the FTC.  It has the expertise and the ability to determine what is deceptive conduct, per *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 384-385 (1965):

> This statutory scheme necessarily gives the Commission an influential role in interpreting §5 [of the FTC Act] and in applying it to the facts of particular cases arising out of unprecedented situations. Moreover, as an administrative agency which deals continually with cases in the area, the Commission is often in a better position than are courts to determine when a practice is 'deceptive' within the meaning of the Act. This Court has frequently stated that the Commission's judgment is to be given great weight by reviewing courts. This admonition is especially true with respect to allegedly deceptive advertising since the finding of a §5 violation in this field rests so heavily on inference and pragmatic judgment..."

*Accord*, *Clifford Steers & Shenfield Inc. v. FTC*, 392 F.2d 921, 925 (6th Cir. 1968) ("reviewing courts are admonished that in cases involving allegedly deceptive advertising the Commission's judgment is to be accorded especial deference"); and *Williams Co. v. FTC*, 381 F.2d 884 (6th Cir. 1967) ("it is the FTC's function to find... facts [and consider ability of advertising to mislead] and a court should not disturb its determination unless the finding is arbitrary or clearly wrong"). See *Encycl.  Brittanica Inc. v. FTC*, 605 F.2d 964, 970 (7th Cir. 1979) (FTC "is the expert body to determine what remedy is necessary to eliminate... unfair or deceptive trade practices"); *Durham v. Brock*, 498 F.Supp. 213, 220 (M.D. Tenn. 1980), *aff'd*, 698 F.2d 1218 (6th Cir. 1982) ("FTC may look both to the meaning of the words and all that is reasonably implied, not only to a careful reader, but... [also] the ignorant, unthinking, and credulous"), *Kraft Inc. v FTC*, 970 F.2d 311, 319 (7th Cir.1992) (FTC "not required to conduct consumer surveys before it determines" that an act is misleading); and *In re Sprint Comms. Co. LP*, 234 Mich.App. 22, 35; 592 N.W.2d 825, 832 (Mich. Ct. App. 1999) ("if the FTC's own evaluation of the advertising [as to its being misleading] is reasonable, its findings may be considered supported by the requisite substantial evidence").

The FTC's findings as to what constituted deception, or unfairness, has been accorded deference frequently, including where its action has come in the form of litigation and consent decrees.  *FTC v. Mandel Bros.*, 359 U.S. 385, 391 (1959) (the FTC's "contemporaneous construction is entitled to great weight even though it was applied in cases settled by consent

rather than in litigation"); *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 496-497 (1st Cir. 2009) ("the host of FTC complaints and consent decrees condemning as 'unfair conduct' specific behavior similar to that charged by plaintiffs" cannot be ignored); *Ramson v. Layne*, 668 F.Supp. 1162, 1168-1169 (N.D.Ill. 1987) (similar); *Alaska v. O'Neill Investigations Inc.*, 609 P.2d 520, 529 (Alaska 1980) ("adjudications which are resolved by consent decree constitute an administrative interpretation of the [FTC] Act which have clear precedential value"); *Massachusetts v. Fremont Inv. & Loan*, 897 N.E.2d 548, 559 (Mass. 2008) (according deference to unfairness concepts in FDIC consent decree on mortgage lending). See *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947) ("the choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency").

Further, the FTC's authority to impose disclosure requirements not expressly required by the statute it is enforcing is unquestionable. *Warner-Lambert Co. v. FTC*, 562 F.2d 749 (D.C. Cir. 1977), *Grolier Inc. v. FTC*, 699 F.2d 983 (9th Cir. 1983). In *Williams*, *supra*, 381 F.2d at 888, the Court found that the makers of Geritol misled people when it failed to disclose (a) that it would help only those who had a deficiency in one or more of the vitamins contained in the product, and (b) many people with certain illnesses would not be helped by correcting those vitamin deficiencies. As held by *Simeon Mgmt. Corp. v. FTC*, 579 F.2d 1137, 1145 (9th Cir. 1978), the failure to disclose relevant and material information "may cause an advertisement to be false or deceptive within the meaning of the [FTC] Act even though the advertisement does not state false facts."

With the Dodd-Frank Act, FDCPA enforcement and rulemaking duties moved to the CFPB. P.L. 111-203, §1001 *et seq.*, 124 Stat. 1376, 1955 *et seq.* (July 21, 2010). Its actions are to be given the same deference.

Further, under *Solis v. Laurelbrook Sanitarium & School Inc.*, 642 F.3d 518, 525 (6th Cir. 2011), an agency's action which is not entitled to *Chevron* deference is still entitled to some deference and a "measure of respect." The amount of deference "will depend upon the

thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id*. (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Under *Delaware Dept. of Nat. Res. v. U.S. Army Corps of Engineers*, 685 F.3d 259, 284 (3d Cir. 2012), "the most important considerations are whether the... interpretation is consistent and contemporaneous with other pronouncements of the agency and whether it is reasonable given the language and purpose of the act."

The actions of these federal agencies make it perfectly clear that defendant's actions were false, deceptive and unfair under the FDCPA. Defendant's arguments must give way to rational findings by these agencies on what is, and is not, permissible.

### B.      Inapplicability of defendant's cited case law

*Beler v. Blatt Hasenmiller Leibsker & Moore LLC*, 480 F.3d 470, 473 (7th Cir. 2007), found that the FTC had not "issued any advisory opinions," or "any helpful opinions in enforcement proceedings," as to what is unfair conduct under 15 U.S.C. §1692f. That was not the case in 2007 (given the number of enforcement actions taken, as listed in <u>Exhibit 5</u> at B1-B3), and did not take into account the FTC's subsequent actions. Further, the conduct that the FTC and the CFPB addressed expressly relies upon state laws declaring debts to be time-barred; the finding in *Beler*, *id.* at 474, that applying the FDCPA would impermissibly use "piggyback jurisdiction" in order enforce state law cannot prevail.[2]

Indeed, *Lox v. CDA Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012) considered a collection attempt which implied that the collector could be entitled to a court award of attorney's fees, and held that "it is improper under the FDCPA to imply that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass.... When language in a debt collection letter can reasonably be interpreted to imply that the debt collector will take action it

---

[2] *Miller v. NCO Portfolio Mgmt. Inc.*, No. 1:09CV616, 2010 WL 2671910 (S.D.Ind. June 28, 2010), which defendant cited (Memo. at 6), relied on *Beler* and is inapplicable here, for the same reasons. The same is true of *Large v. LVNV Funding LLC*, No. 1:09CV689, 2010 WL 3069409 (W.D.Mich. Aug. 2, 2010); this case is further discussed *infra*.

has no intention or ability to undertake, the debt collector that fails to clarify that ambiguity does so at its peril."  (Citations omitted.)  The Court referred to state law to determine what charges were permitted.  It also made it clear that a misrepresentation as to a debtor's rights violated the FDCPA, even absent a threat.  *Accord*, *Easterling v. Collecto Inc.*, 692 F.3d 229 (2d Cir. 2012). This, naturally, would extend to the failure to disclose a material fact.

Defendant also cited to *Beler*, *id*., for the idea that "the phrase 'unfair or unconscionable' is as vague as they come." (Memo. at 6.)  Defendant then reversed field and suggested that, as the issue here was not identified in the FDCPA, this court cannot use statutory interpretation principles – *because the statute was perfectly clear*.  (Memo. at 8 (quoting *United States v. Boucha*, 236 F.3d 768, 774 (6th Cir. 2001).)  Defendant thus tries to have it both ways, when it entitled to neither of them.

*Schaefer v. ARM Receivable Mgmt. Inc.*, 2011 WL 2847768 (D.Mass. July 19, 2011), relied upon by defendant, predates the recent conclusions of the FTC and the CFPB.  So do the cases relied upon by Schaefer – *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28 (3d Cir. 2011), *Freyermuth v. Credit Bureau Servs. Inc.*, 248 F.3d 767 (8th Cir. 2001), *Dawe v. Capital One Bank*, 456 F.Supp.2d 236 (D.Mass. 2006), *Shorty v. Capital One Bank*, 90 F.Supp.2d 1330 (D.N.M. 2000),[3] and *Walker v. Cash Flow Consultants Inc.*, 200 F.R.D. 613 (N.D.Ill. 2001). *Schaefer* at *3-*4.  Moreover, the FTC and CFPB may overturn prior actions.  *Spiegel Inc. v. FTC*, 540 F.2d 287 (7th Cir. 1976); *FTC v. IFC Credit Corp.*, 543 F.Supp.2d 925, 940 (N.D.Ill. 2008).  See *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972) (FTC can consider whether an act is "within at least the penumbra" of concept of unfairness).

*Olvera v. Blitt & Gaines PC*, 431 F.3d 285, 287 (7th Cir. 2005) dealt with a claim that a rate of interest dunned for by a collector was illegal.  The problem found by *Olvera* was that, under Illinois law, a collector could not seek the same rate of interest in a collection attempt as an original creditor would.  The Court analyzed state law and concluded that a debt buyer was allowed to charge the same rate. *Olvera*, 431 F.3d at 287-288.  Also, the FTC action considered

---

[3] This decision has also been overtaken by N.M. Admin. Code §12.2.12.1 *et seq.*, *supra.*

11

in *Olvera* came from staff comments on the FDCPA issued in 1988. 53 Fed.Reg. 50097 (Dec. 13, 1988); *id.* at 50108 (regarding service charges; cited in *Olvera*, 431 F.3d at 287). This commentary does not discuss pursuit of time-barred debts in any way.

## IV. THE FDCPA, AND SIXTH CIRCUIT AND MICHIGAN CASE LAW

Per15 U.S.C. §1692e, "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." Collectors specifically cannot give a "false representation of the character, amount, or legal status of any debt," and cannot "use... any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§1692e(2)(A), and 1692e(10).

> *Wallace v. Washington Mut. Bank FA*, 683 F.3d 323, 326-327 (6th Cir. 2012) held that
>
> whether a debt collector's actions are false, deceptive, or misleading under [15 U.S.C. §1692e] is based on whether the "least sophisticated consumer" would be misled by defendant's actions. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). [In] applying this standard, we have also held that a statement must be materially false or misleading to violate [15 U.S.C. §1692e]. See *Miller v. Javitch Block & Rathbone*, 561 F.3d 588, 596-97 (6th Cir. 2009) (applying a materiality standard to a Section 1692e claim that was based on alleged misstatements in legal pleadings). The materiality standard... means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer. (Emphasis added.)

### A. The failure to disclose that the debt was time-barred

Defendant's letter did not disclose that the debt was time-barred and could not be legally enforced. (Doc. 1, ¶21 and Exhibit A.) This, according to federal agencies with authority to regulate and act against debt collectors, and an independent academic study, and several state and local authorities, is a material fact that alleged debtors ought to know. The failure to include it in the letter defendant sent to plaintiff therefore constitutes a FDCPA violation.

The conclusions of the FTC and CFPB are consistent with reading the FDCPA liberally in the favor of consumers' interests. This is required by *Bridge v. Ocwen Fed. Bank FSB*, 681 F.3d 355, 362 (6th Cir. 2012):

> the Fair Debt Collection Practices Act is an extraordinarily broad statute. Congress addressed itself to what it considered to be a widespread problem, and to remedy that

12

problem it crafted a broad statute. Our actions are guided by the hand of Congress, and thus we apply the Act broadly according to its terms. Our sister circuits have done the same.

Under *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008), "the least-sophisticated-consumer test is objective and is designed to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."

Despite defendant's attempts to downplay the importance of statutes of limitations (Memo. at 3-4), "every statute of limitations deprives plaintiffs of a remedy at the moment the period of limitations expires." *Trentadue v. Buckler Lawn Sprinkler*, 479 Mich. 378, 403; 738 N.W.2d 664, 678 (Mich. 2007). *Board of Regents v. Tomanio*, 446 U.S. 478, 487-488 (1980) held that "statutes of limitations are not simply technicalities. On the contrary, they have been long respected as fundamental to a well-ordered judicial system.... [In] the judgment of most legislatures and courts, there comes a point at which the delay of a plaintiff in asserting a claim is sufficiently likely either to impair the accuracy of the fact-finding process or to upset settled expectations that a substantive claim will be barred without respect to whether it is meritorious." *Accord*, *Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003).

Communications giving the impression that an enforcement action can be successfully pursued, when the claim is time-barred, has only one purpose: to trick the consumer into believing that she is obliged to pay money to a debt collector, when she is not. It is deceptive to do this in the hope that the consumer will act by paying money.[4]

The seminal decision in *Kimber v. Federal Fin. Corp.,* 668 F.Supp. 1480, 1489 (M.D. Ala. 1987) is persuasive:

> Whether it is true that a statute of limitations defense does not erase the right underlying a lawsuit but rather prevents success on a claim is immaterial, for the court cannot agree

---

[4] A consumer could agree to make a payment, in response to a debt collector's request, for any number of reasons (such as, for example, to get collection calls to stop notwithstanding doubts about whether the debt was owed). However, this does not eliminate, but only exacerbates, defendant's FDCPA violation. The fact that the collector sought payment on an unenforceable debt, without disclosing that to the consumer, was materially false and unfair, as it sought to induce the waiver of a consumer's legitimate, and total, defense to an alleged debt. See *Yeiter v. Knights of St. Casimir Aid Society*, 461 Mich. 493, 497; 607 N.W.2d 68, 71 (Mich. 2000) (how statutes of limitations could be waived).

with [the collector] that this legal principle, even if true, lends approval to the practice of threatening and undertaking lawsuits for which the statute of limitations has clearly run and for which there is no evidence that would warrant tolling. The dispositive fact is that a debt collector could not legally prevail in such lawsuit, and for the debt collector to represent otherwise is fraudulent.

By threatening to sue [the consumer] on her alleged debt, [the collector] violated [15 U.S.C. §§1692e(2)(A) and 1692e(10)]; by threatening to sue her, [the collector implicitly] represented that it could recover in a lawsuit, when in fact it cannot properly do so. To be sure, [the collector] did not expressly state to [the consumer] that her suit was not time-barred; nor did [the collector] expressly tell [the consumer] that she had no legal defenses to its claim. But to be deceptive a representation need not be expressed and it need not be obvious to everyone; rather, as previously observed, the representation is deceptive... if it has the mere tendency or capacity to deceive the least sophisticated consumer....

Here, it is obvious to the court that by employing the tactics it did, [the collector] played upon and benefitted from the probability of creating a deception. Honest disclosure of the legal unenforceability of the collection action due to the time lapsed since the debt was incurred would have foiled [the collector's] efforts to collect on the debt. So instead, the corporation implicitly misrepresented to Kimber the status of the debt, and thereby misled her as to the viability of legal action to collect.

*Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 331 (6th Cir. 2006) "express[ed] no opinion on the question" of whether filing time-barred claims in Court is a FDCPA violation.  It cannot be seen as a rejection of cases like *Kimber*, as defendants suggest.  (Memo. at 5.)  Nor can it be viewed as a prediction of what the Court of Appeals would say on the subject now, in light of *Wallace*, *Bridge*, *Lamar* and the findings of the FTC and CFPB.

This Court should reject any suggestion that advising consumers of the time-barred nature of an alleged debt is in any way onerous.  For one thing, the actions of the FTC and the CFPB make it clear that this is a requirement.  But defendant itself, as late as January 29, 2013, started to stated in its letters sent on behalf of LVNV Funding – the same debt buyer that purported owns plaintiff's debt – that "the law limits how long you can be sued on a debt. Because of the age of your debt, LVNV Funding LLC will not sue you for it, and LVNV Funding LLC will not report it to any credit reporting agency."  (Exhibit 14.)  The list of tasks listed by defendant, for the proposition that disclosing the time-barred nature of a debt would impose a requirement (and a burden) not required by the FDCPA (Memo. at 9), is apparently well within defendant's abilities as a debt collector.

**B.     The settlement proposal on a time-barred debt**

Defendant's letter offered settlement.  This implies that a legally enforceable obligation existed.  This was not true.  Plaintiff's issue with the letter is not, as defendant would have it, an attack on settlement proposals in debt collection letters (Memo. at 9), but an attack against the use of false and unfair tactics within such proposals.  Defendant's letter used such tactics, contrary to the FDCPA and the same case law that was just recited.  See *McMahon II* at *3 (an unsophisticated consumer may be deceived into believing that the offer of a 'settlement' implies that there is a legally enforceable obligation to pay the debt").

By stating that (a) a large amount of money was owed to a creditor, and (b) the creditor was willing to accept less money in order to settle the matter, defendant implicitly suggested that there was a way to *force* plaintiff to pay the larger amount – a worse result than the settlement. This would be fine *if* the consumer had no grounds to dispute the debt; a "settlement" implies a colorable legal obligation which, if worse than the terms of the proposed settlement, could be avoided.  *Collection Professionals Inc. v. Logan*, 296 Ill.App.3d 959, 695 N.E.2d 1344 (Ill. Ct. App. 1998).  However, that was *not* the case here, given the complete defense to any enforcement action provided by the statute of limitations.  Plaintiff had *no* enforceable obligation to defendant; the letter tries to trick her into believing that she had such an obligation, and that relieving it by paying a smaller amount would actually be a good deal, when in fact it was not.

## V.     OTHER RELEVANT CASES

**A.     *McRill v. Nationwide Credit***

All of the preceding was recently synthesized in holdings in *McRill*, *supra*, 2012 WL 6727974.  The case considered a letter which is only nominally different from the one considered here.  *Id*. at *1.  First, as regards the disclosure issue, *McRill*, *id*. at *4, rejects one of defendant's chief arguments:

> Plaintiff does not, as Defendant asserts, "impermissibly seek[ ] to rewrite the FDCPA," by arguing that the language of [15 U.S.C. §1692g], or any other provision, explicitly requires Defendant to disclose that a debt is time-barred. Rather, Plaintiff asserts that Defendant's failure to do so is deceptive and unfair within the meaning of §1692e and §1692f. Therefore, the fact that no provision of the FDCPA explicitly requires the disclosure of a debt's time-barred status does not, as Defendant argues, doom Plaintiff's

15

claims. Indeed, a collection letter may deceive and be unfair to an unsophisticated consumer, under §1692e and §1692f, by omitting key information about the character of the debt, even where the omission of that information does not violate the disclosure requirements identified in §1692g. See *Fields v. Wilber Law Firm PC*, 383 F.3d 562, 566 (7th Cir.2004).

Given that, *McRill*, *id.* at *5, held that

it is plausible that, even absent a threat of litigation, a collection letter that fails to disclose that a debt is time-barred, or the dates of the transactions giving rise to the debt (which would, at least, give the consumer some idea of how old the debt was), would deceive at least a significant fraction of the population as to the character and legal status of the debt by creating the impression that the debt collector could sue to collect.

*Compare id.* to Memo. at 8-9 (citing *Neff v. Capital Acquis. & Mgmt. Co.*, 352 F.3d 1118 (7th Cir. 2003) and *Boucha*, *supra*).

Further, *McRill* held that whether deception occurred is a question of fact that counsels against a Rule 12(b)(6) dismissal of a FDCPA claim (*id.* at *3, citing *Zemeckis v. Global Credit & Coll. Corp.*, 679 F.3d 632, 636 (7th Cir. 2012), *cert. denied,* 133 S.Ct. 584 (2012)). *McRill*, *id*. at *6, called the FTC's 2010 report (Exhibit 6) "convincing" and "a reasoned explanation of how an unsophisticated consumer would perceive a collection letter like the one plaintiff received from defendant." Based on the preceding, *McRill* afforded *Skidmore* deference to the FTC's actions. *Id*. at *5-*6.[5]

The reasoning of *McRill* is closer to the issues at hand here than in *Large v. LVNV Funding LLC*, *supra*, which dealt with a claim that a debt collection letter did not make a disclosure required by the Truth in Lending Act. The only statute that plaintiff seeks to enforce here is the FDCPA. And it was violated. 15 U.S.C. §1692e declares that "a debt collector may not use **any** false, deceptive, or misleading representation or means in connection with the collection of any debt." (Emphasis added.) Under basic statutory construction principles, the result is clear: if a statement in a debt collection attempt is false, deceptive or misleading, it

---

[5] On review of the Magistrate's report and recommendation, the District Judge in *McRill* said that the recommendation was "thorough and well-reasoned," and agreed that "it is plausible that, even absent a threat of litigation, a collection letter that fails to disclose that a debt is time-barred, or the dates of the transactions giving rise to the debt (which would, at least, give the consumer some idea of how old the debt was), would deceive at least a significant fraction of the population as to the character and legal status of the debt by creating the impression that the debt collector could sue to collect." *McRill*, 2012 WL 6727722 at *1.

16

violates the statute. Statements in a debt collection may misstate the amount owed, or the original creditor, or any other material fact about the debt. And it may – as shown above – give the false impression that a debt is legally enforceable.

Relevant sections of the FDCPA require reference to state laws. 15 U.S.C. §1692e(2)(A) provides that debt collectors are prohibited from "false representation of the character, amount, or **legal status** of any debt." (Emphasis added.) In *McRill*, and in this case, the violation of a state statute (a statute of limitation) creates a violation of the FDCPA, because it makes a statement within the debt collection attempt false, misleading and unfair. *Weathers v. Gem City Account Serv. Inc.*, No. 3:09CV3280, 2010 WL 3210985, *4 (C.D.Ill. Aug. 13, 2010) declined to apply *Beler* in a case where a claimed debt was not collectible; there, as here, a law other than the FDCPA governed the "legal status" of a debt.

### B. Other cases

The *McMahon* cases, discussed *supra*, did not discuss the CFPB's actions against American Express, which were taken months after these decisions. Nor did *McMahon I*, 2012 WL 2597933 at *3, have the benefit of the FTC's report issued last month; the statement by the Court that "the FTC has not issued an official commentary or advisory opinion on this matter" is out of date. In addition, the claim made by the court that the FTC's findings were "ambiguous at best" (*id*.) on the collection of time-barred debt is no longer true:

> When collectors attempt to recover on debts, in many circumstances, such efforts may convey or imply to consumers that the collectors could sue them if they do not pay. **If the debts are time-barred, this message would be false or misleading,** because the collectors in fact cannot legally file an action against them if they do not pay. Information about the consequences of not paying debts being collected appears to be important to consumers in deciding whether to pay debts and in what order to pay debts. (Exhibit 8 at 46-47 (emphasis added).

Compare *McMahon* to *Rawson, supra*, 2012 WL 3835096 at *2 ("to the extent that plaintiff claims that the dunning letter implies that the debt is legally enforceable when it is, in fact, barred by the statute of limitations, I conclude that plaintiff has stated a claim"). Thus, the *McMahon* findings as to the disclosure of whether a time-barred debt is required have been overtaken by the latest actions by the FTC and the CFPB

The same FTC statement quoted above totally undermines defendant's fractured reading of *Crawford v. Vision Fin. Corp.*, *supra*, 2012 WL 5383280 at *2-*4, for the proposition that "merely seeking collection of a time-barred debt does not violate the FDCPA."  (Memo. at 4 and 4 n.2.)  The Court considered a letter seeking collection on a time-barred debt which referred to "further financial liability" and – contrary to defendant's claim – found that it "may improperly imply litigation."  The Court concluded that, "because it is a close question, the court thinks it best... to act with restraint and to err on the side of giving the plaintiff a chance to submit evidence showing that the language of a debt-collection letter is misleading."  *Crawford*, at *4. This result is more than warranted here, because *Crawford* was decided without the benefit of the latest pronouncement from the FTC, which removes any ambiguity as to whether dunning for time-barred debt is proper conduct.

## VI.    CONCLUSION

For reasons stated herein, the motion to dismiss should be denied.

Respectfully submitted,

s/ Thomas E. Soule
Thomas E. Soule

Daniel A. Edelman
Thomas E. Soule
Edelman Combs Latturner & Goodwin LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

### CERTIFICATE OF SERVICE

I hereby certify that the preceding document was served by me upon counsel for defendant, Jennifer Weller (jweller@hinshawlaw.com), with all exhibits, on February 15, 2013 via electronic mail.

s/ Thomas E. Soule
Thomas E. Soule

18